(C.D. 3046)

HURRICANE IMPORT CO. \
WHEELER & MILLER } *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 28, 1967)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, and *Edward N. Glad* of counsel) for the plaintiffs.

*Carl Eardley*, Acting Assistant Attorney General (*Morris Braverman* and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before WATSON and RAO, Judges, and OLIVER, Senior Judge

WATSON, Judge: The merchandise in the case at bar consists of rattan side chair frames, which were classified under paragraph 409 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, and assessed with duty at the rate of 25½ per centum ad valorem under the provision in said paragraph for "Furniture wholly or in chief value of rattan." The protest was limited to the item invoiced as No. 8137F or 8137 (R. 2).

Plaintiffs in this protest claim the merchandise in question properly classifiable at the rate of 17 per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified, *supra*, as "Furniture wholly or partly finished and parts thereof, wholly or in chief value of wood, and not specially provided for."

Plaintiffs also claim that an established and uniform practice of classifying such merchandise at the rate of 17 per centum ad valorem under paragraph 412 of the tariff act existed, and that no notice of "change of practice" was published by the Bureau of Customs as required by section 315(d) of the Tariff Act of 1930, as amended. The Government, on the other hand, contends that no such established and uniform practice ever existed. Section 315(d) of the Tariff Act of 1930,

as amended by the Customs Simplification Act of 1953, T.D. 53318, provides as follows:

(d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice, shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

The record in this case consists of the testimony of four witnesses called by the plaintiffs and, in addition, there were introduced in evidence a number of exhibits, including a sample of the item here under consideration.

Plaintiffs' exhibit 1 consists of a sample of item No. 8137, designated as "1 piece rattan side chair frame," here in question. (R. 5–7.) Plaintiffs' exhibit 2 consists of a sample of a chair seat installed on plaintiffs' exhibit 1, subsequent to importation of the item at bar, to complete the chair. (R. 9.) Plaintiffs' collective exhibit 3 consists of copies of certain documents from the files of customhouse brokers relative to alleged liquidations of rattan furniture at various ports .(R. 20–27.) Plaintiffs' illustrative exhibit 4 consists of photographs of unfinished rattan chairs imported by another importer, Calif-Asia Co. at the port of Los Angeles. Plaintiffs' illustrative exhibit 6 consists of a photograph of an upholstered seat for use with plaintiffs' exhibit 4 after importation. (R. 51–52.) Plaintiffs' illustrative exhibit 7 consists of a photograph of a seat cover for use with the stool depicted in plaintiffs' collective illustrative exhibit 5. Plaintiffs' exhibit 8 consists of a letter from the appraiser of merchandise at Los Angeles with respect to the rate of duty assessed at that port on unfinished rattan chairs and other furniture. (R. 59.) Plaintiffs' collective exhibit 9 consists of copies of certain letters exchanged between the importer herein, the Treasury Department and the appraiser's office in San Francisco relative to the rate of duty assessed on certain furniture. Plaintiffs' collective exhibit 10 consists of certain correspondence between the importer, the Bureau of Customs, and the Secretary of the Treasury in connection with the assessment of duty on furniture in chief value of wood. Such reference to these exhibits will be hereinafter made as is deemed pertinent to a determination of the issue herein.

Plaintiffs called, as their first witness, Mr. Fred Schlesinger, president of Hurricane Import Company, importers of rattan furniture and other merchandise of that nature. The witness stated that he has been engaged in the designing, manufacturing, supervision, and sale

of rattan furniture. (R. 4–5.) Specifically, he stated that he had handled sales of the involved item, No. 8137, and had observed the work performed on it after importation. On cross-examination, Mr. Schlesinger testified that he imported the item in question only through the ports of Los Angeles, San Francisco, Portland, and Seattle. The witness testified that plaintiffs' exhibit 1 is known as a rattan side chair frame and is sold to furniture stores and department stores. (R. 13.) In the opinion of this witness, plaintiffs' exhibit 1 is not an item of furniture in its imported condition because "it is not complete and not usable." (R. 13.) He agreed, however, that the item has no other use than as a piece of furniture. (R. 14.)

Plaintiffs' second witness was Mr. Morris Greenblat, chairman of the board of the Hurricane Import Company. His duties included taking care of the business of the company, being responsible for selling and merchandising items such as plaintiffs' exhibit 1. (R. 16.) He stated that he believed the importing of such items began in 1955, 1956, or 1957 and that it has continued for some "five or six or seven years," (R. 16.) The witness testified that item 8137F was sold to department stores, furniture stores, and hotel and restaurant supply people to be used as a chair, but that it is never sold in the form as imported without the seat to go with it. (R. 35–36.)

Plaintiffs also called as a witness Mr. William Grimm, Jr., executive vice president of Calif-Asia Rattan Co., whose principal business is the importation of rattan furniture. (R. 42–43.) The witness stated that his firm had been importing an item similar to plaintiffs' exhibit 1 since December 1960. He testified that he considered such an item as "being unfinished, not ready for sale." (R. 45.) Mr. Grimm stated that since March 1956 his firm had imported unfinished stools of rattan (plaintiffs' collective illustrative exhibit 5). He further testified that plaintiffs' exhibit 4, "a side chair or dining chair," is sold with a cushion in the United States, but that it is never sold as depicted in plaintiffs' exhibit 4 (R. 50) ; that he tried to sell it in that condition but customers refused to buy it, stating that "it was unfinished and incomplete"; that it was necessary to add an upholstered seat (R. 51) and that the same thing prevailed in the case of plaintiffs' exhibit 5. (R. 52.) He further testified that when he described plaintiffs' exhibit 4 as "a side chair or dining chair," he was referring to it in its completed state. (R. 62.)

Mr. P. F. Feran, assistant customs appraiser at the port of Los Angeles, testified that he had been advisorily classifying merchandise such as that at bar, since 1953. He stated that the merchandise was initially classified under paragraph 409 as articles in part of rattan at 45 per centum until about 1954 when it was classified under para-

graph 412 as an unfinished chair (R. 64), which classification continued until March of 1960. (R. 65.)

Counsel for the plaintiffs and the Government stipulated that item 8137F on entry 7499 in plaintiffs' collective exhibit 3 was advisorily classified by the examiner at the port of San Francisco at 17 percent under paragraph 412 as parts of wood furniture and that item 8137F on entry 19783 in collective exhibit 3 was advisorily classified and liquidated at 17 percent under paragraph 412 (R. 88) ; that item 8137F on entry 19818, involved in the protest in this case, was advisorily classified by the examiner at the port of San Francisco as liquidated by the collector as parts of wood furniture under paragraph 412. (R. 89.) Subsequently, counsel for the respective parties stipulated that, based on the letter of August 25, 1961 (plaintiffs' collective exhibit 10), only four entries covering item 8137 and 8137F were liquidated at the lower rate of 17 percent ad valorem at the port of San Francisco and that only three entries covering item 8137 or 8137F were liquidated at the port of Los Angeles at 17 percent ad valorem and that all subsequent entries of these items were classified and liquidated at the higher rate of duty of 25½ percent under paragraph 409. (R. 102.)

The issue in this case is, essentially, whether the merchandise at bar is more specifically covered by the provisions of paragraph 412 of the tariff act for "Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for: chairs," as claimed, than by the provisions in paragraph 409 of said act, as modified, for "Furniture wholly or in chief value of rattan * * *."

In support of the collector's classification, the defendant in its brief directs our attention *inter alia* to the holding of the court in *Necchi Sewing Machine Sales Corp. and Barian Shipping Co., Inc.* v. *United States*, 30 Cust. Ct. 1, C.D. 1489.

In the *Necchi Sewing Machine* case, *supra*, the merchandise therein involved consisted of certain sewing-machine cabinets, with fine finishes and decorative features, designed to accommodate home-type sewing machines. The question there presented was whether the cabinets, imported empty, i.e., without the sewing machine heads which were intended to be placed therein, were properly classifiable under the provision in paragraph 412 of the Tariff Act of 1930, as modified, for "furniture," as claimed by the plaintiffs, or under the provision in the same paragraph, as modified, for "manufactures of wood," as classified by the collector. The record in the *Necchi* case, *supra*, disclosed that the imported sewing-machine cabinets were of two types, one type fitted with a treadle to operate the sewing machine in areas where electric current was not available. The other type did not have the treadle and

was for use with a sewing-machine head which was fitted with an electric motor. Both types had openings or cutouts in the top surfaces thereof and provision was made in each for affixing, in a permanent fashion a sewing-machine head in such manner that when not in use the machine head could be dropped down inside the cabinet and the opening fitted with a cover so that the top of the cabinet presented a smooth, polished surface. The court in the *Necchi* case, *supra*, concluded, upon inspection of the exhibits, that the involved items were embraced within the dictionary definition of the term "furniture," stating in this connection, at page 3, as follows:

Based upon the the facts of record and those of which we take judicial notice, we are satisfied that both types of sewing-machine cabinets here involved are (1) articles of convenience in that they store and provide support for household sewing machines, and are also (2) articles of decoration by reason of the finish and style thereof. As such articles and in both functions they are used to furnish a home. In our view, therefore, they are embraced within the foregoing definition, and being stipulated to be in chief value of wood, they fall within the provision for "Furniture * * * in chief value of wood." Whether they take classification thereunder, however, depends upon whether they are not more specifically provided for elsewhere in the tariff act.

In passing upon the question whether the involved sewing-machine cabinets could be considered as "parts" of sewing machines, in the sense that the sewing-machine head and the cabinet, when the former is attached to the latter, are collectively a sewing machine, the court therein, at page 4, stated:

Assuming without deciding that sewing-machine cabinets may be parts of sewing machines, we note that the only parts of sewing machines provided for specifically in the tariff act (paragraph 372) are those wholly or in chief value of metal or porcelain. This provision, of course, would exclude from its purview the cabinets here involved, as they are stipulated to be in chief value of wood. Further, we are satisfied that even if the cabinets at bar were considered to be parts of sewing machines in a factual rather than a tariff sense, they are, nonetheless, at the same time, furniture within the meaning of that term as used in the tariff act—in other words, that to be considered to be furniture an article need not necessarily be complete in itself. We think that the cabinets at bar are analogous to the familiar disappearing-well type of typewriter desks which all would consider to be furniture, whether or not they had typewriters affixed to them.

There being no more specific provision in the tariff act for the sewing-machine cabinets in issue, the protest claim for duty at the rate of 12½ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, is sustained, and judgment will issue accordingly.

In our opinion, the chair frames involved in the case at bar are not, for classification purposes, similar to the type of articles that were

before the court in the *Necchi* case, *supra*. In the latter case, the sewing-machine cabinets functioned as cabinets and were, accordingly, usable as items of furniture. In the case at bar, however, the chair frames in question could not be employed for their ultimate use without the addition of a seat. As heretofore indicated, plaintiffs' witness testified that the item in question is not an item of furniture in its imported condition because "it is not complete and not usable." (R. 13.)

In the above connection, plaintiffs in their brief maintain that in point is the holding of the court in *Abercrombie & Fitch Co.* v. *United States*, 10 Cust. Ct. 382, Abstract 47958.

In the *Abercrombie* case, *supra*, the merchandise consisted of a hand gear ship's wheel mounted on a binnacle stand. It appeared that the addition of a glass top made the articles suitable for use as tables, but that no glass tops were imported with them. The merchandise was classified at 40 per centum ad valorem under paragraph 412 of the Tariff Act of 1930 under the provisions for "furniture, wholly or partly finished, and parts thereof * * * wholly or in chief value of wood, and not specially provided for," and was claimed dutiable at 25 per centum ad valorem under the same paragraph, as modified by the Trade Agreement with the United Kingdom, T.D. 49753, which provided for "Furniture (other than chairs), wholly or partly finished, wholly or in chief value of wood and not specially provided for." The court further found that the greater part by far of the table to be finished was incorporated in each of the imported articles, namely, the binnacle stand and wheel, and that the only part lacking was the glass top. The claim of the plaintiff in the *Abercrombie* case, *supra*, at 25 percent under paragraph 412 and T.D. 49753 was, therefore, sustained. While the provisions of paragraph 409 of the tariff act here in question were not involved in the *Abercrombie* case, *supra*, the court therein pointed out that the addition of a glass top made the article suitable for use as "tables" and that the articles there imported were in fact "partly finished" tables dutiable under paragraph 412 as furniture wholly or partly finished. The chair frames here in question are comparable in their aspect to the articles involved in the *Abercrombie* case and are, likewise, more properly classifiable as partly finished furniture.

Certain other decisions cited by the plaintiffs and recourse to the legislative history of the pertinent paragraphs, as discussed below, support, in our opinion, a holding for the claimed classification.

In a document entitled "Memorandum Of Court Decisions Affecting Tariff Act of 1922" prepared for the use of The Committee On Ways and Means, contained in the volume entitled "Committee Reports and

Conference Reports to Accompany H.R. 2667 (Tariff Act of 1930)," at page 26, there is the following:

In *United States* v. *Basket Importing Co.*, 15 Ct. Cust. Appls. 161, T.D. 42220, the court held that certain willow chairs were not dutiable under paragraph 407, as classified by the collector, because not made on frames which were fastened together before the willow covering was placed on the chair, but were dutiable as furniture of wood under paragraph 410. * * *

In the case of *A. Hartog & Co.* v. *United States*, Abst. 7611, 55 Treas. Dec. 962, certain chairs covered with seagrass were held not dutiable as furniture made with frames and covered with grass under paragraph 407, as classified, but dutiable as wood furniture under paragraph 410.

If these decisions are not in accordance with the Congressional intent, it is suggested that the provisions should be amended. If the words "made with frames wholly or in part of wood, rattan, reed, bamboo, osier or willow, or malacca, and" were eliminated and the word "seagrass" inserted after the word "grass", it is believed that the situation can be cured, making the provision read:

Par. 407. * * * Furniture ~~made with frames wholly or in part of wood, rattan, reed, bamboo, osier or willow, or malacca, and~~ covered wholly or in part with rattan, reed, grass, *seagrass*, osier or willow, or fiber of any kind, * * *

Paragraph 409 of the Tariff Act of 1930 now reads in pertinent part "Furniture wholly or in chief value of rattan, reed, bamboo * * * seagrass * * *." It would appear that Congress adopted a suggested change which allows furniture made with seagrass as well as furniture of certain other specified material made with or without the use of independent frames to be dutiable in one provision.

In *United States* v. *Basket Importing Co.*, 15 Ct. Cust. Appls. 161, T.D. 42220, there was involved the proper classification of certain willow chairs. The question for determination was whether the merchandise was dutiable as assessed by the collector as furniture made with frames wholly or in part of willow and covered wholly or in part with willow under paragraph 407 of the Tariff Act of 1922 or as house furniture wholly or in chief value of wood under paragraph 410 of the same act. The court therein cited with approval the holding in *United States Willow Furniture Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 90, T.D. 40938, wherein the court in the latter case, page 92, stated:

So far as the common meaning is concerned, we think the word "frame" as applied to chairs, means the skeleton framework thereof, to, around, or upon which are applied and placed the materials which make the finished chair.

To hold as the Government in effect contends, that when completed the chairs in this case present a framed appearance, and so are *made with frames*, would result that every chair, regardless of its construction, would be made with a frame. If this is so, the use of the term "made with frames" in the paragraph was wholly unnecessary and the expression "furniture wholly or in part of wood, etc." would have accomplished the purpose contemplated by Congress if it were that claimed by the Government.

There is before us an illustrative exhibit showing a chair that is made with a frame. If all the covering material of rattan, willow, or whatever it may be, were removed therefrom, a frame would remain which would show the skeleton of a chair. If like treatment were applied to the typical exhibit of the imported chairs, no frame would remain.

We think the testimony amply supports the finding of the board that these chairs are not made with frames within the meaning of paragraph 407.

The court, in the *Basket Importing* case, *supra*, page 164, stated:

The legislative history cited by the Government to the effect that certain representations were made to Congress by American manufacturers concerning the inclusion of the word "willow" in paragraph 407 is not convincing that Congress intended the inclusion within the paragraph of the merchandise at bar. The completed result of the legislation was made to include any willow chairs which are "made with frames" and which otherwise meet the requirements of the paragraph, such as the illustrative exhibits before us, which admittedly are made with frames.

and, at page 165, further stated:

* * * In this case, to give the language use the effect urged by the Government, we think, would be legislation rather than proper interpretation * * *.

So, too, in the case at bar, we are of opinion that it would be improper and contrary to the legislative intent to read into paragraph 409 here in question the language "unfinished" or "partly finished." The involved merchandise is properly embraced within the provisions of paragraph 412 of the tariff act for "partly finished" furniture, wholly or in chief value of wood. In *Patterson & Wylde* v. *United States*, 45 Treas. Dec. 911, Abstract 46965, the court therein cited *Tuska* v. *United States*, 1 Ct. Cust. Appls. 535, T.D. 31547, holding that rattan is a form of wood.

In *Calif-Asia Co., Ltd.* v. *United States*, 39 CCPA 133, C.A.D. 475, certain furniture, wholly or in chief value of "cane" was *held* to be properly dutiable as "Furniture wholly or in chief value of wood in paragraph 412 rather than as classified under the provisions of paragraph 409 for furniture, wholly or in chief value of * * * rattan

* * *." The court in the *Calif-Asia Co.* case, *supra*, concluded that Congress distinguished between "cane" and "reed" or "rattan" or any other material in paragraph 409, and the court therein said:

It appears to us * * * that the omission of "cane" from that part of paragraph 409 relating to furniture means that Congress did not intend to provide duty thereunder on such furniture as is here involved.

In Senate Document No. 21 (contained in the volume entitled "Committee Reports and Conference Reports to Accompany H.R. 2667 (Tariff Act of 1930)" there was proposed an amendment to paragraph 408 (now 409) so as to read "* * * Furniture wholly *or partly finished*, and *parts thereof*, *wholly* or in chief value of rattan, reed, bamboo * * *." In Senate Report No. 37 from the Committee on Finance, 1st session, schedule 4, "Wood and Manufactures of," at page 21, the reason given for adding such language to proposed paragraph 408 (now 409) was to cover "unfinished furniture of the type mentioned and parts of furniture." This change relating to paragraph 408 (now 409) was rejected. Accordingly, it would appear that the omission of the proposed language "wholly or partly finished and parts thereof" from paragraph 409 as finally enacted indicates, in our opinion, a congressional intent not to provide for "partly finished" furniture (or parts thereof) in paragraph 409 of the Tariff Act of 1930.

As heretofore noted, plaintiffs contend, in the case at bar, that a uniform and established practice existed to classify partly finished rattan furniture under paragraph 412 of the Tariff Act of 1930 under the provisions of "Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for." Defendant, on the other hand, maintains that the record in this case does not establish that such a uniform practice existed, and further, that notice of change of practice, which plaintiffs claim should have been given, is required only when the Secretary of the Treasury finds that an established and uniform practice has existed and will be affected by the change. In this connection, our attention is directed to the holding of our appellate court in the case of *Washington Handle Co.* v. *United States*, 34 CCPA 80, C.A.D. 346. In the latter case, the court, in holding that there was not an "established and uniform practice" with respect to the classification of the merchandise there involved, stated, page 86:

In the Customs Administrative Act it will be noted that notice and the 30 days' waiting period are not required unless it is found by the Secretary of the Treasury that "an established and uniform practice" is affected by the change. The Secretary of the Treasury found that there was no such practice. If this matter was entrusted to the Secretary by Congress, it is no concern of ours. But in view of the contentions of the importer, we think it proper to say that 28 shipments of

the instant imported materials at two subports, under the circumstances herein recited, cannot properly be held to constitute "an established and uniform practice" in respects with which we are here concerned.

It thus appears that "notice" of a change of practice in the classification of merchandise and the 30 days' waiting period are not required unless it is found by the Secretary of the Treasury that "an established and uniform practice" is affected by the change. The record in the case at bar not only fails to show that an established and uniform practice in classifying merchandise such as that at bar existed but, further, affirmatively establishes that the Secretary of the Treasury found that no such practice existed. The testimony of Mr. Feran discloses that importations of items like plaintiffs' exhibit 1 had been advisorily classified by him since approximately 1953 at the port of Los Angeles in three different ways as:

* * * Articles in part rattan, under paragraph 409, at 45 per cent, and subsequently, at the reduced rate, at 25. Then under paragraph 412, at 17 per cent rate, as a chair partly finished, in chief value of wood; and finally under paragraph 409, at 25½ per cent, as rattan furniture. [R. 63–66.]

Plaintiffs' witness, Schlesinger, testified that his company paid a 25½ percent rate of duty on some importations of merchandise such as plaintiffs' exhibit 1 and 17½ percent on others (R. 10–11). Further, it appears that the rate of duty on such importations varied by port (R. 10). It further appears from the testimony of plaintiffs' other witnesses that merchandise such as that here in question was classified at different rates of duty at different times and that the Secretary of the Treasury found that no established and uniform practice existed in classifying merchandise such as here involved (plaintiffs' collective exhibit 10). In view of our holding herein, further discussion on this question is deemed unnecessary.

On the record here presented and in view of the holdings in the cases above cited, together with the legislative background of the pertinent paragraphs under consideration, we are of opinion and hold that the involved merchandise is properly dutiable under paragraph 412 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 17 per centum ad valorem under the provisions therein for "Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for: Chairs," as claimed.

Judgment will be rendered accordingly.