60 CCPA

**AUTHENTIC FURNITURE PRODUCTS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5518.**

United States Court of Customs and Patent Appeals.

Nov. 15, 1973.

Leonard M. Fertman, Stein & Shostak, Los Angeles, Cal., Attys. of record, for appellant.

Irving Jaffe, Acting Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Velta A. Melnbrencis, New York City, for United States.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This appeal is from the decision and judgment of the United States Customs Court, First Division, 68 Cust.Ct. 204, 343 F.Supp. 1372, C.D. 4362 (1972) overruling appellant's protest to the classification of imported pieces of wooden bunk beds as parts of furniture under TSUS item 727.40, as modified. Appellant, relying on General Interpretative Rule 10(h),[1] claims the proper classification to be as furniture other than chairs under item 727.35, as modified.

The merchandise consists of wooden headboards, footboards, posts, ladders and guardrails in unassembled condition. We agree with the lower court that the record establishes that siderails, which are not imported, are necessary to make the bunk bed units usable to the ultimate consumer. The issue lies in whether the absence of these siderails necessitates classification of the imported pieces as parts of furniture.

We find no error in the lower court's holding that parts of an article may be classified as the unfinished article itself only when the imported pieces constitute a substantially complete article, albeit in unassembled condition. We fully agree that the definition of "unfinished" found in American Import Co. v. United States, 26 CCPA 72, T.D. 49612 (1938) and carried over to the TSUS in Finn Bros., Inc. v. United States, 454 F.2d 1404, 59 CCPA 72, C.A.D. 1042 (1972) can be, and has been, employed only to distinguish, in the sense of the tariff schedules, the status of an unfinished article from the material of manufac-

---

1. 10. *General Interpretative Rules.* For the purposes of these schedules

   \*     \*     \*     \*     \*

  (h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

   \*     \*     \*     \*     \*

ture. The so-called "dedication to use" test found in those cases makes no distinction whatsoever between the unfinished article and parts thereof.

Appellant argues before us that the "substantially complete" test of the lower court fails to provide sufficient guidelines for determining proper classification and proposes in its stead a "dedication to use" test applied "with reason." Recognizing that adoption of a naked "dedication to use" test would effectively eliminate competing parts provisions, appellant advances a modified version, namely, dedication to use in conjunction with an evaluation of the quantum, utilitarian function, and other relevant characteristics of the imported pieces.

■ We cannot, however, agree that such a test is more definitive than that set forth by the lower court. Nor can we find any support for this interpretation of the import of Rule 10(h), in particular with respect to the classification of furniture, in the cases cited by appellant. Both Hurricane Import Co. v. United States, 58 Cust.Ct. 541, C.D. 3046 (1967) and Abercrombie & Fitch Co. v. United States, 10 Cust.Ct. 382, Abs. 47958 (1943) were cases involving classification under the Tariff Act of 1930. There was no counterpart to Rule 10(h). The furniture provision itself drew the distinction between "wholly or partly finished" furniture and "parts thereof" rather than between "finished or not finished" and "parts."

Appellant's final contention is that, even if the "substantially complete" test be the proper criterion, the imported merchandise meets that standard in that the major and most significant parts have been imported and are sold as imported. It is emphasized that the siderails necessary to hold the bed upright are often offered for sale separately or even supplied by the consumer himself and a comparison is drawn with the incomplete furniture classified as "partly

finished" in the *Abercrombie* and *Hurricane* cases.

■ Considering as we must, however, the goods in their imported form, we find the missing siderails to be an essential item. We thus find no basis for overturning the lower court's finding that the imported pieces constituted less than a substantially complete bunk bed. We consider the application of the test, whereby the absence of a substantial or essential part precludes classification as the unfinished article itself, to be well founded in the case law so ably discussed by the lower court and aptly followed in the present case.

The decision and judgment of the Customs Court is affirmed.

Affirmed.

MILLER, Judge, dissenting, with whom RICH, J., joins.

I believe the majority opinion not only misstates the test to be applied in determining when parts of an article cannot be classified as the unfinished article itself, but misapplies the test it states.

The test is not, as the majority opinion states, the absence of a substantial *or* essential part, but, rather, the absence of a substantial *and* essential part. Twin Pin Co. of U. S. A., Inc. v. United States, 24 Cust.Ct. 430, Abstract No. 54254 (1950).

The issue is well stated by the majority opinion, namely: whether the absence of the side rails necessitates classification of the imported merchandise as "parts of furniture." However, in applying the test, it proposes to consider the word "essential" only in the *functional* rather than the *commercial* sense, namely: that without the side rails the merchandise in question is not "usable" as bunk beds to the ultimate consumers.

Following this approach, nuts and bolts to hold the parts of a bed together to make it "usable" would be considered "essential," so that their absence

would preclude classification of such parts as "furniture" rather than "parts of furniture"—a result that I cannot perceive this court permitting. The side rails here, as pointed out by appellant, act as the hardware holding the merchandise together and are analogous to nuts and bolts. Moreover, it appears from the record that in the case of many consumers the merchandise was "usable" (in the "commercial sense") because they already had side rails. Thus, on cross-examination, a sales representative for appellant (and former buyer in the bedding department of Macy's, California) testified:

> Q. Are you saying that an ordinary bed is sold without side rails?
>
> A. It could be sold either way. It can be sold with side rails; it can be sold without. Many times we have customers that come in who have side rails, and we sell them without side rails. · .   .

The case of Abercrombie & Fitch Co. v. United States, 10 Cust.Ct. 382, Abstract No. 47958 (1943) is clearly in point. There the articles, each of which comprised only the base of a table, were held by the Customs Court to be dutiable as "partly finished tables rather than parts of tables." The court pointed out "that the greater part by far of the table to be finished is incorporated in each of the imported articles" and that the addition of a glass top after importation made the articles "suitable for use as tables."

The majority opinion apparently seeks to distinguish the *Abercrombie* case by noting that it involved the Tariff Act of 1930, wherein the furniture provision itself drew the distinction between "wholly or partly finished" furniture and "parts thereof"; whereas this case involves the distinction under the Tariff Schedules, including Rule 10(h), between "finished or not finished" furniture and "Parts of furniture." But the *Abercrombie* case cannot be so distinguished. The court there held that the

articles were not *parts*, but partly finished tables, even though the tops were obviously essential (in the functional sense) to make them usable as tables. So, too, this court should hold that the merchandise in question is not *parts*, but furniture (finished or not finished), even though side rails are essential (in the functional sense) to make it usable as bunk beds.

Perhaps my chief difficulty with the majority opinion is that it simply ignores the clear, corroborated, and uncontroverted evidence before the Customs Court regarding practice in the furniture trade which, in the absence of a contrary indication by the Congress, is controlling. Nylos Trading Company v. United States, 37 CCPA 71, C.A.D. 422 (1949) and cases cited therein. That practice was to market the merchandise as substantially complete bunk beds. Thus, appellants' sales representative, again on cross-examination, further testified:

> Judge Watson: Are you familiar with how beds are offered for sale to the ultimate consumer?
>
> The Witness: Yes, I am.
>
> \*   \*   \*   \*   \*   \*
>
> Judge Watson: Are side rails offered separately with bunk beds—and when I say, "are they offered separately": are they sold separately?
>
> The Witness: Yes, sir.
>
> Judge Watson: Is there any additional price over and above that of the bed that is sold?
>
> The Witness: Yes, there is.
>
> This same witness, on cross-examination by government's counsel, then testified:
>
> Q. In your opinion, it is a complete bed without a side rail?
>
> A. Using the terminology of the word "bed" in the trade, yes.

No witnesses were produced by the government.

Pages from a Sears & Roebuck catalog (appellant's Exhibit 1) fully corroborate the above testimony. On one page is the designation:

BUNK BEDS TO SUIT YOUR EVERY NEED

On the same page appears the following:

*Bunk Beds* include head and footboards, guardrail ladders.

*Bunk Outfits* include above items plus steel link springs and your choice of 152-coil inner spring, or 4-inch Serofoam polyurethane mattress. With cotton and rayon covers.

The distinction between "beds" and "outfits" appears throughout the price list. Three different "Bunk Beds" (without rails) are listed: a double-decker at $54.95; a triple-decker at $69.95; and another double-decker at $99.95. Each listing refers to the following item:

*Rails for Bunk Beds without springs*

These are priced at $4.99 per set of two, with the notation that 1 set is needed for each bed.

From the standpoint of price relationships alone, honest differences might arise over whether the rails constitute a "substantial part." But from the standpoint of the furniture trade, which is controlling, they are not so substantial as to preclude marketing the merchandise in question to dealers and the ultimate consumer as "Furniture" rather than "Parts of furniture."

In view of the foregoing, I conclude that appellant has sustained its burden of proving that classification of the merchandise in question as "Parts of furniture," under 727.40 of the Tariff Schedules, is erroneous and that classification as "Furniture other than chairs," whether finished or unfinished, under item 727.35 of the Tariff Schedules and Rule 10(h), is proper.

I would reverse.