TERUMO CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 84–8–01089

Before DiCARLO, *Judge.*

(Decided February 21, 1986)

*Stein Shostak Shostak & O'Hara (Robert Glenn White)* for the plaintiff.

*Richard K. Willard,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Field Office, Department of Justice (*Saul Davis*), for the defendant.

## MEMORANDUM OPINION AND ORDER

DICARLO, *Judge:* Plaintiff challenges the United States Customs Service (Customs) classification of merchandise invoiced as "Clirans Hollow Fiber Dialyzers" under item 709.17 of the Tariff Schedules of the United States (TSUS) as "Electro-medical apparatus, and parts thereof: * * * Other." Plaintiff claims that the dialyzers are properly classifiable under item 661.95, TSUS, as "filtering and purifying machinery and apparatus * * * for liquids or gases * * * and parts thereof * * * other."

Defendant moves for summary judgment. The parties agree that the dialyzers are used for medical purposes in the filtering and purifying of blood and that there are no questions of fact which prevent the Court from deciding the motion. Defendant's motion is granted.

Defendant asserts that item 661.95, TSUS, comes under Headnote 1(v) to Schedule 6, Part 4, TSUS, which states: "This part does not cover— * * * articles and parts of articles specifically provided for elsewhere in the schedules." Defendant argues that the dialyzers are specifically provided for under item 709.17, TSUS, as other electro-medical apparatus. Further, says defendant, even if item 709.17, TSUS, is not a specific provision within the meaning of Headnote 1(v), the merchandise is still properly classified under that provision.

Plaintiff contends that item 709.17, TSUS, is a broad tariff provision which does not provide "specifically" for the dialyzers within the meaning of Headnote 1(v) to Schedule 6, Part 4. Plaintiff admits that the merchandise comes within the description of item 709.17, TSUS, but argues that item 661.95, TSUS, is more specific. It also argues that the Brussels Nomenclature[1] indicates Congressional intent that dialyzers be classified under item 661.95, TSUS, as filtering and purifying machinery.

The Court holds that the specificity of the competing provisions does not control since Congress intended that medical dialyzers be classified under Part 2 of Schedule 7. "[T]he basic rule of construction of a statute is that the intent of Congress is to be given effect and all other rules of construction must yield * * *." *S & T Imports, Inc.* v. *United States,* 78 Cust. Ct. 45, 49, C.D. 4690 (1977). The Court

---

[1] Customs Co-Operation Council, *Nomenclature for the Classification of Goods in Customs Tariffs* (1955) (Brussels Nomenclature), and *Nomenclature-Explanatory Notes* (1955).

may look to the intent of Congress when "not entirely certain of the meaning of the statutory language when applied to the particular facts of this case." *Rikfin Textiles Corp.* v. *United States,* 54 CCPA 138, 142, C.A.D. 925, *cert. denied,* 389 U.S. 931 (1967).

The *Explanatory Notes* to the Brussels Nomenclature are a source for ascertaining legislative intent, where the language of the Brussels Nomenclature and the TSUS are similar. *See Toyota Motor Sales, U.S.A., Inc.* v. *United States,* 7 CIT 178, 585 F. Supp. 649, 655 (1984), *aff'd,* 753 F.2d 1061 (Fed. Cir. 1985). Items 661.95 and 709.17 of the TSUS are similar to Headings 84.18 and 90.17 of the Brussels Nomenclature. *See Pharmacia Fine Chemicals, Inc.* v. *United States,* 9 CIT 438 (1985), *Nippon Kogaku (U.S.A.), Inc.* v. *United States,* 1 CIT 328, 521 F. Supp. 466 (1981).

Plaintiff contends that the dialyzers are classifiable under item 661.95, TSUS, since the *Explanatory Notes* state regarding Brussels Heading 84.18:

> The heading also covers dialysers, special type filters consisting essentially of a semi-permeable membrane through which liquids can pass by diffusion and thus be separated from colloidal particles.

This note, which refers to dialyzers generally, does not indicate that Heading 84.18 covers dialyzers that are chiefly used for medical purposes.[2]

The *Explanatory Notes* description of Brussels Heading 90.17 indicates that articles described by a term which may be used to describe both medical and nonmedical apparatus should be classified under the heading which describes the term in its general meaning only where the articles in question are not identifiable as being for medical use:

> This heading covers a very wide range of instruments and appliances which, in the vast majority of cases, are used only in professional practice (e.g., by doctors, surgeons, dentists, veterinary surgeons, midwives, etc.), either to make a diagnosis, or * * * to carry out some treatment on the patient.
>
>   *      *      *      *      *      *      *
>
> It should be noted that a number of the instruments used in medicine and surgery (human and veterinary) are, in effect, tools * * *. Such articles are classified in the present heading only when they are clearly identifiable as being for medical or surgical use * * *.

Therefore, while nonmedical dialyzers might come under Brussels Heading 84.18, medical dialyzers would be classified under heading

---

[2] *Webster's Third New International Dictionary* defines the following terms:

> dialyzer. an apparatus in which dialysis is carried out consisting essentially of one or more containers for liquids separated into compartments by membranes in any of various forms (as a sheet, bag or tube).
> dialysis * * * 1: the separation of substances in solution by means of semipermeable membranes (as of parchment, cellophane, or living cells) through which the smaller molecules and ions diffuse readily whereas the larger molecules and collodial particles diffuse very slowly or not at all, such separations being important in nature (as in living organisms and in soils) and having many applications (as in blood) fractionation or in the recovery of sodium hydroxide in the manufacture of viscose)—used esp. of the separation of noncolloids from colloids (as proteins); * * * 2 bot: the separation of parts which are normally united esp. in the same floral whorl.

90.17.[3] To the extent that the *Explanatory Notes* are relevant, they support Customs classification.

The intent of Congress is more explicitly shown in the *Tariff Classification Study*. "The *Tariff Classification Study*, published by the United States Tariff Commission pursuant to Congressional delegation (Customs Simplification Act of 1954, Public Law 83–768, 68 Stat. 1136), is regarded by the court as a source of legislative history of the TSUS." *Certified Blood Donor Services, Inc.* v. *United States*, 62 CCPA 66, 69 n.2, C.A.D. 1147, 511 F. 2d 572, 575 (1975).

The *Tariff Classification Study* says that Schedule 7, Part 2, Subpart B, entitled "Medical and Surgical Instruments and Apparatus," which contains item 709.17, encompasses medical instruments and appliances which previously were spread among seven of the schedules of the Tariff Act of 1930.

> This subpart covers a wide variety of instruments and appliances used generally in professional practice for diagnosis, prevention, and treatment of diseases, the correction of deformities and defects, the repair of injuries, etc. These articles are presently dutiable at a number of different rates in a number of widely separated paragraphs in seven of the present tariff schedules. In assimilating the various provisions for these closely related instruments and appliances into this subpart, articles imported in significant quantities have been provided for wherever possible at the existing rates of duty * * *.

9 *Tariff Classification Study*, at 144–46.

Plaintiff's proposed classification, item 661.95, TSUS, is contained in Schedule 6 of the TSUS, entitled "Metals and Metal Products." Its predecessor, Schedule 3 of the Tariff Act of 1930, entitled "Metals and Manufactures of," was one of the seven schedules from which Schedule 7, Part 2, Subpart B was assimilated.[4]

Schedule 6, Part 4 of the TSUS was intended to cover general-purpose articles rather than medical equipment. Subpart A, which includes item 661.95, TSUS, is entitled "Boilers, Non-Electric Motors and Engines, and Other General-Purpose Machinery." The Tariff Classification Study states:

> This subpart covers a wide variety of machinery and appliances which can be used in numerous industrial applications as set forth in headnote 1 to this subpart * * *. The systematic grouping of general-purpose machines and appliances in this subpart, together with the rule expressed in the headnote, would provide greater stability to the product classifications.

---

[3] Headnote 1(e) to chapter 84 of the Brussels Nomenclature provides further indication that medical dialyzers would be classified under heading 90.17. The headnote states: "This section does not cover * * * articles falling within chapter 90 "

[4] *See* 9 *Tariff Classification Study*, at 144. The predecessor provisions to the items contained in Schedule 7, Part 2, Subpart B indicate that this subpart was assimilated from schedules 2, 3, 4, 9, 12, 13, and 15 of the Tariff Act of 1930. *See id.* at 102–03.

8 *Tariff Classification Study,* at 260. Nothing in the *Tariff Classification Study* indicates that medical equipment is classifiable under item 661.95, TSUS.[5]

The Court concludes that Schedule 6, Part 4 of the TSUS does not provide for the classification of medical dialyzers which are properly classified under Schedule 7, Part 2, Subpart B of the TSUS.

After considering the undisputed facts, the relevant portions of the TSUS, and the intent of Congress, the Court concludes that medical dialyzers fall within Schedule 7, Part 2, Subpart B of the TSUS, and that they are properly classified within that subpart under item 709.17, TSUS.[6] Judgment will be entered accordingly. So ORDERED.

---

[5] The *Tariff Classification Study* lists as predecessor provisions to item 661.95, TSUS, paragraphs 353, 360 and 372 of the Act. 8 *Tariff Classification Study* at 243, 263. Insofar as any medical instruments might previously have been classified under those paragraphs, such articles are currently provided for under Subpart B to part 2 of Schedule 7, since paragraph 360 is cited as a predecessor to item 790.07, TSUS, and paragraph 372 as predecessor to items 709.40 and 709.45, TSUS.

Although paragraph 353 of the Tariff Act of 1930 refers to certain therapeutic and diagnostic apparatus, it provided for non-medical articles as well. Since paragraph 353 is cited as a predecessor provision to item 709.17, as well as item 709.40, 709.45, 709.50, and 709.61–70, TSUS, it is apparent that Congress intended that the portion of that paragraph relating to medical articles be succeeded by provisions contained in Schedule 7, and that the portion relating to non-medical articles be succeeded by provisions contained in Schedule 6.

[6] The Court need not, and does not, address defendant's argument that item 709.17, TSUS, is a provision which describes dialyzers "specifically" within the meaning of Headnote 1(v) Schedule 6, Part 4.