**ARTHUR J. HUMPHREYS, INC., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 92–1032.

United States Court of Appeals, Federal Circuit.

Aug. 24, 1992.

Stephen S. Spraitzar, Law Offices of George Tuttle, A Professional Corp., of San Francisco, Cal., argued for plaintiff-appellee. With him on the brief was George R. Tuttle.

Saul Davis, Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, International Trade Field Office. Also on the brief were Steven Berke, Gen. Atty. and Edward N. Maurer, Office of Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, of counsel.

Carol A. Joffe, William C. Ives and Robin W. Grover, Keck, Mahin & Cate, Washington, D.C., were on the brief for amicus curiae, American Hardboard Ass'n.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and MAYER, Circuit Judge.

SKELTON, Senior Circuit Judge.

In this case plaintiff Arthur J. Humphreys, Inc. challenges the classification of embossed vegetable hardboard fiber panels manufactured in Canada by a company named Canfor, and imported by it into the United States during the years 1980–1981 through plaintiff, its customhouse broker who entered the merchandise on behalf of Canfor. The panels were embossed to resemble brick, stucco, stone or wood patterns. Some were subjected to V-grooving on the face and portions of the edges, while the brick, stucco and stone patterns were cut to form straight edges. The panels were then prefinished with undercoats of paint and grainprinted to provide the appropriate color to the embossed patterns. The panels were manufactured and designed to be used as decorative wall and ceiling covering.

Customs classified the panels under item 245.30, TSUS, covering various types of

hardboard, whether or not face finished. The plaintiff claims that the proper classification is under item 245.90, TSUS: "building boards, not specially provided for, whether or not face finished: other boards, of vegetable fibers (including wood fibers)....". The plaintiff appealed the Custom classification to the Court of International Trade.

At the trial, the court found that 90% of the merchandise is used for wall or ceiling covering, and the remaining 10% is used primarily in the construction of furniture and retail displays. In the opinion of the court the 10% of the merchandise used for purposes other than wall or ceiling panelling is not sufficient to make it a material with a variety of uses, such as hardboard.

In its initial opinion of May 3, 1991, the court held that the plaintiff had overcome the presumption of correctness attaching to the classification by Customs, and that the merchandise has been sufficiently advanced that it is no longer an input material commercially susceptible to multiple uses classificable as hardboard under item 245.30, and that it is properly classified under item 245.90. Judgment was entered for the plaintiff.

On August 16, 1991, the court granted defendant's motion for a rehearing and issued its final opinion in which it adhered to the reasoning and decision enunciated in its prior opinion. Accordingly, judgment was entered in favor of the plaintiff against the government, and Customs was ordered to reclassify plaintiff's merchandise in conformity with the opinion of the court and to refund to plaintiff any excess duties paid, with interest, in accordance with law. The court then dismissed the action.

The government appeals to this court, and generally makes the same arguments that it made to the trial court. Upon review by this court, we find that the issues raised by the government were thoroughly and persuasively addressed by Judge Di-Carlo in his two opinions, copies of which are attached, in which judgment was entered for the plaintiff. Accordingly, we adopt his opinions as the decision of this court.

AFFIRMED.

## APPENDIX

DiCARLO, Judge:

Plaintiff challenges the classification of several styles of vegetable fiber panels manufactured and designed to be used as decorative wall and ceiling covering. Customs classified the merchandise as hardboard under item 245.30, Tariff Schedules of the United States (TSUS). Plaintiff asserts the merchandise is properly classifiable as building board under item 245.90, TSUS. In the event the Court finds Customs' classification to be incorrect, Customs offers an alternative classification as laminated building board under item 245.-80, TSUS. The Court finds plaintiff has overcome the presumption of correctness in Customs' classification and will remand this action to Customs if the government wishes to pursue its alternative classification.

## BACKGROUND

The merchandise consists of various styles of rigid panels six millimeters thick; 10 are four feet by eight feet and one is four feet by four feet. The rectangular panels are designed and manufactured for use as wall paneling. The square panel is designed and manufactured for use as ceiling tile.

Some of the wall panels are designed to simulate the appearance of various wooden surfaces. The "Buckingham" style, for example, is designed to simulate formal inlaid woodwork typical of an English library. The "Colonial Pine" style simulates molded knotty pine paneling. All of the wood grain patterns have interior grooving which is either embossed or machined onto the panel during the manufacturing process. These panels have grooves at varying distances with at least one every 16 inches. In addition to creating a decorative pattern, the grooves have the ancillary function of hiding nails used to secure the panels to studs in the wall.

Other styles simulate non-wood surfaces. "Manor House," for example, is embossed with a brick pattern. "Hacienda" has the look of lightly troweled stucco. The ceiling panel is similar to "Hacienda" except that it has interior grooving to give the appearance of 12 inch square tiles.

Several styles of the merchandise have functional edgework. The edgework ensures proper installation to produce the desired pattern. The remaining styles have straight edges because the order in which the panels are installed does not affect the pattern.

Customs classified the merchandise under item 245.30, TSUS, covering various types of hardboard, whether or not face finished. Plaintiff claims the proper classification is under item 245.90, TSUS: "[b]uilding boards, not specially provided for, whether or not face finished: other boards, of vegetable fibers (including wood fibers)...." The government proposes, as an alternative classification, item 245.80, TSUS: "[b]uilding boards, not specially provided for, whether or not face finished: [l]aminated boards bonded in whole or in part, or impregnated, with synthetic resins...."

At the trial, the parties entered into stipulations of fact and the Court made findings of facts on the record. One of the findings the Court made is that 90% of the merchandise is used as wall or ceiling covering. The remaining 10% is used primarily in the construction of furniture and retail displays.

## DISCUSSION

The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States*, 889 F.2d 267, 268 (Fed.Cir.1989). Whether a particular article fits within the meaning of a tariff term is a question of fact. *Brookside Veneers, Ltd. v. United States*, 6 Fed.Cir. (T) 121, 124, 847 F.2d 786, 788, *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

The TSUS provision for hardboard is an *eo nomine* provision. In the absence of limitations or a contrary legislative intent, an *eo nomine* provision includes all forms of the product. *C.T. Takahashi & Co. v. United States*, 74 Cust.Ct., 38, 46, C.D. 4583 (1975); *see also Tomoegawa USA, Inc. v. United States*, 12 CIT 112, 116, 681 F.Supp. 867, 870, *aff'd in part, vacated and remanded in part*, 861 F.2d 1275 (Fed.Cir.1988). An improvement in merchandise provided for *eo nomine* does not remove it from classification under the *eo nomine* designation. *Takahashi*, 74 Cust. Ct. at 46. Nevertheless, if the merchandise is advanced so as to become the article for which the material was intended, it may fall outside the *eo nomine* classification. *See, e.g., A.N. Deringer, Inc. v. United States*, 61 Cust.Ct. 66, 72, C.D. 3530, 287 F.Supp. 1016, 1021 (1968) (wooden wedges used in construction not sufficiently advanced to be classified as a manufacture of wood rather than as lumber).

Plaintiff maintains its merchandise is a form of processed hardboard that has become the article for which the material was intended; in this case, building board. The government counters that since plaintiff's merchandise has commercially significant uses beyond those for building board, it has not ceased to be classifiable as hardboard. Furthermore, the government warns that accepting plaintiff's argument would so enlarge the scope of the TSUS provision for building boards that provisions for similar merchandise will become superfluous.

This Court has previously considered the three TSUS items at issue. *See American Hardboard Assoc. v. United States*, 12 CIT 714, 1988 WL 84132 (1988). In *American Hardboard*, Customs initially classified prefinished lap siding with a plastic locking spline attached to the back as building board under TSUS item 245.90. After a remand, the merchandise was reclassified as laminated building board under item 245.80, TSUS. Plaintiff claimed the proper classification was as hardboard under item 245.30, TSUS. *Id.* at 714.

## I. Hardboard

### A. Fungibility and the *American Hardboard* Standard

In *American Hardboard,* the court considered the legislative history as embodied in the *Tariff Classification Study* to determine the meaning of the term hardboard. According to the study:

> Hardboard is used chiefly in construction, in cabinet and millwork, in furniture and fixtures, and other fabricated and industrial products, in transportation equipment, for display purposes, in games, toys, and sporting products; also a high-density type of hardboard is used for dies in spinning and forming light-gauge metals, for jigs and templates, and for structural electrical-insulation materials. 4 *Tariff Classification Study* 67.

The court concluded

> that the hardboard designated *eo nomine* is a basic, fungible material capable of being used for a variety of functions.... This legislative history indicated that at some point the material designated as hardboards and provided for *eo nomine* under 245.30, TSUS, may no longer be within that classification because it has been advanced beyond a basic, fungible material and has become a new and different article of commerce.

*Id.* at 716. The court found the merchandise was "suitable *only* for use as interlocking siding in construction...." and was, therefore, "advanced beyond the basic, fungible material known as hardboard...." *Id.* at 717 (emphasis added).

The Court notes that by using the expression "basic, fungible material" in *American Hardboard,* it did not intend to imply that hardboard classifiable under TSUS item 245.30 must be interchangeable or substitutable with hardboard from another manufacturer in the sense that sand or wheat may be a fungible commodity. Rather, the court meant only that hardboard is an input material commercially susceptible to a variety of uses.

Based on the result in *American Hardboard,* the government maintains that since plaintiff's merchandise is suitable for more than a single use, it is necessarily an input material rather than a manufactured article. Although the *American Hardboard* court found the plastic spline permanently attached to the siding made it "suitable only for use as interlocking siding in construction," this factual finding was addressed to the merchandise at issue and did not state a general proposition of law. Rather, whether merchandise is classifiable as hardboard under item 245.30, TSUS, depends on the factual advancements unique to the merchandise. *American Hardboard,* 12 CIT at 717.

Here, the Court has found that 90% of plaintiff's merchandise is put to its intended use as wall or ceiling covering. The question is whether the use of the remaining 10% is sufficient to make the merchandise an input material rather than a manufactured article.

### B. Dedication to Particular Use

Plaintiff relies on a series of cases involving marble slabs and articles fashioned from marble for the proposition that 90% dedication to a particular use is sufficient to make merchandise a manufactured article. In *United States v. Quality Marble & Granite Co.,* 48 CCPA 50, C.A.D. 763 (1960), the merchandise consisted of "square, rectangular, and round pieces of marble of three-quarters and five-eighths of an inch in thickness." The marble was polished on one side and the top edges were slightly rounded. The rectangular pieces had many uses. Ninety percent of the round pieces, however, were used as table tops. All of the merchandise was used in its imported condition. *Id.* at 51.

The government contended the merchandise was properly classifiable as wholly or partly manufactured articles. The importer claimed the correct classification was as the input material marble slabs. The Court of Appeals found that to use the marble in any way other than in the condition in which it was imported "would nullify part of the work which had already been done on [it]." *Id.* at 53. The court held the merchandise was classifiable as wholly or

partly manufactured articles even though it was susceptible to other uses. *See also A.P. Baldechi & Son v. United States*, 56 CCPA 112, C.A.D. 963, 420 F.2d 756 (1969) (following *Quality Marble* ).

In *United States v. Selectile Co.*, 49 CCPA 116, C.A.D. 805 (1962), the court faced essentially the identical issue. In this case, however, the merchandise was "often ... cut to the correct dimensions for the particular installation, either in length or width, or in both dimensions.... None of the larger pieces was used in the condition as imported." *Id.* at 118 (quoting opinion of the Customs Court). The court held "the imported merchandise is nothing more than material which appellees stock in sizes most adaptable to their marble installation business. Under these circumstances, ... the merchandise cannot be considered 'articles'...." *Id.* at 119–20. The court distinguished *Quality Marble* on the fact that 90% of the merchandise in that case was used in its imported condition. *Id.* at 120.

In its brief, the government has made no attempt to distinguish these cases. Nevertheless, the government argues that following *Quality Marble* would produce results contrary to Congressional intent.

Plaintiff also relies on *Permagrain Prods., Inc. v. United States*, 9 CIT 426, 623 F.Supp. 1246 (1985), *aff'd*, 4 Fed.Cir. (T) 87, 791 F.2d 914 (1986), where the merchandise was wood parquet flooring tiles. Customs classified the merchandise as "other wood flooring" and the plaintiff maintained it was properly classifiable as "hardwood lumber, rough, dressed or worked." Testimony at trial established that a *de minimis* percentage of the merchandise was put to a use other than as flooring. *Id.* at 437, 623 F.Supp. at 1255.

The court stated that "if the lumber has been processed to the extent that *it itself* became the article for which the material was intended, then it is dutiable as a manufacture of wood and not as lumber." *Id.* at 435, 623 F.Supp. at 1253 (quoting *A.N. Deringer, Inc. v. United States*, 61 Cust. Ct. 66, 72, C.D. 3530, 287 F.Supp. 1016, 1021 (1968)) (emphasis in original). The

court held the merchandise had been advanced to the degree that it ceased to be lumber and was classifiable as flooring. *Id.* 9 C.I.T. at 435–36, 623 F.Supp. at 1254.

These cases make it clear that merchandise may fall within a classification for manufactured articles even though as much as 10% of it is put to uses inconsistent with that classification. Consequently, the fact that 10% of the panels at issue are put to alternative uses is not dispositive.

The government relies upon *C.T. Takahashi & Co. v. United States*, 74 Cust.Ct. 38, C.D. 4583 (1975) as authority for its argument that the wall panels and ceiling tile are an input material classifiable as hardboard. *See* Defendant's Brief at 38–43. *Takahashi* considered the classification of plywood wall panels that had been decorated with face grooving and edgework. The paneling was known to the trade and advertised as plywood. Plaintiff maintained the proper classification was "manufactures of wood" rather than "plywood." The court held the grooved plywood paneling had not been subjected to a manufacturing process that caused it to lose its identity as plywood. *Id.* at 49.

The *Takahashi* decision emphasized that each case stands upon its own particular facts and that whether merchandise is an article rather than an input material depends upon the nature of the material involved and the degree of processing to which it was subjected. *Id.* at 48 (quoting *B.A. McKenzie & Co., Inc., et al. v. United States*, 47 CCPA 42, 46, C.A.D. 726 (1959)). The manufacturing at issue in *Takahashi* was V-grooving. *Id.* at 49. Here, plaintiff's panels are subjected to more elaborate processing which may include machining or embossing with a stylized textured surface, printing with durable inks, face grooving and edgeworking. The resulting product is far removed from "standard hardboard" as exemplified by Plaintiff's Exhibit 14B. Plaintiff's merchandise has the look and feel of products as diverse as brick (Plaintiff's Exhibit 16C), roughly dressed wood (Plaintiff's Exhibit 8A) and stone (Plaintiff's Exhibit 3A). *Takahashi* is, therefore, factually distinguishable.

*Takahashi* is also distinguishable because it concerned an *eo nomine* provision for plywood that was without limitation. As a result, any form of plywood would be classifiable under that provision. *Id.* at 46. As the government has argued, under *American Hardboard,* TSUS item 245.30 is not an unlimited *eo nomine* provision but is limited to material commercially susceptible to multiple uses. A form of hardboard that does not have multiple uses is excluded from classification under that item. In this context, the threshold for a commercially significant multiple uses appears to be something more than 10% alternative use.

Having considered Customs' classification both independently and in relation to the plaintiff's proposed classification and the government's alternative classification, *see Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984), the Court finds plaintiff has overcome the presumption of correctness attaching to Customs' classification. *See* 28 U.S.C. § 2639(a)(1) (1988). The imported merchandise has been advanced beyond hardboard; a new and different product has been produced. While 10% of this merchandise is put to a use other than wall or ceiling panelling, that amount is not sufficient to make it a material with a variety of uses. *See United States v. Quality Marble & Granite Co.,* 48 CCPA 50, C.A.D. 763 (1960).

The government raises several objections to this conclusion. First, it contends the variety of uses for the merchandise demonstrates it is merely one form of hardboard. The Court has already found those other uses to be insufficient to make this merchandise classifiable as an input material.

Second, the government asserts this Court's conclusion will conflict with Congressional intent by "eviscerating" many provisions in Schedule 2, Part 3, TSUS. This argument is based on the mistaken assumption that the Court's holding allows articles with divergent uses to be classified as manufactured articles. The Court's

holding is based on the controlling authority of the Court of Appeals and is limited to the merchandise at issue in this action. The Court expresses no opinion whether the result would have differed if less than 90% of the merchandise sold was used as wall panels or ceiling tile.

Further, the Tariff Schedules indicate that building boards of plywood or gypsum would not fall within the provision for building board. Plywood is specifically defined in headnote 1(b), Part 3, Schedule 2, TSUS. Building board made of plywood is, therefore, both more specifically described and specially provided for under the provisions for plywood. Similarly, building boards of gypsum or plaster are also more specifically described and specially provided for under the provisions for gypsum and plaster board. The Court's holding, therefore, does not unduly expand the scope of the building board provision.

Finally, the government's reliance on industrial hardboard standards is misplaced. Industrial or commercial standards are useful in ascertaining the commercial meaning of a tariff term. *See Toyota Motor Sales v. United States,* 7 CIT 178, 182–83, 585 F.Supp. 649, 653–54 (1984), *aff'd,* 3 Fed.Cir. (T) 93, 753 F.2d 1061 (1985). In this case, however, the TSUS provision predates the commercial standard. The standard, therefore, does not reflect the congressional understanding of the term "hardboard" at the time the TSUS provision was enacted.

## II. Building Boards

Plaintiff claims the proper classification of its merchandise is under item 245.90, TSUS, covering building boards, whether or not face finished, of vegetable fibers. Building boards are defined in the TSUS as "[p]anels of rigid construction, including tiles and insulation board, chiefly used in the construction of walls, ceilings, or other parts of buildings." Headnote 1(e), Part 3, Schedule 2, TSUS; *American Hardboard,* 12 CIT at 717. There appears to be no dispute as that plaintiff's merchandise is panels of rigid construction chiefly used in the construction of walls, ceilings, or other parts of buildings.

## III.  Laminated Building Boards

The government's proposed alternative classification is as laminated building boards under item 245.80, TSUS. The government, however, has not briefed this issue and, in the event the Court finds the merchandise is not hardboard, seeks additional time for discovery and briefing. Plaintiff opposes this request asserting the government should have pursued this issue in a more timely manner.

The government contends it sought no discovery on the lamination issue because it was satisfied with deposition testimony from plaintiff's witness. The government now claims the witness "dramatically changed" his testimony at trial. Accordingly, the government seeks further proceedings on this issue.

At trial, the parties were advised that the Court might refer the case to Customs if it became necessary to reach the lamination issue.

## CONCLUSION

While it is clear that the merchandise has a variety of commercial applications, the Court finds the merchandise has been sufficiently advanced that it is no longer an input material commercially susceptible to multiple uses classifiable as hardboard under item 245.30, TSUS. Consequently, the issue of lamination must be decided. Customs is ordered to advise the Court within 30 days whether it wishes to pursue its alternative classification under TSUS item 245.80. If it so advises the Court, the action will be remanded for appropriate administrative action. If the Court is not so advised, judgment will be entered in favor of plaintiff.

/s/Dominick L. DiCarlo
DOMINICK L. DiCARLO
Judge

Dated: May 3, 1991.

DiCarlo, Judge:

Pursuant to Rule 59 of the Rules of this Court, defendant moves for rehearing of this Court's decision in *Arthur J. Humphreys, Inc. v. United States*, 15 CIT ——,

764 F.Supp. 188 (1991).  The Court grants defendant's motion for rehearing and finds the merchandise is not classifiable as hardboard, whether or not face finished, other. Accordingly, judgment is entered in favor of plaintiff.

## BACKGROUND

The background to this case is set forth in the Court's prior opinion.  The Court found plaintiff had overcome the presumption of correctness in Customs' classification and the merchandise is not classifiable as hardboard, which is an input material commercially susceptible to a variety of uses.  *Humphreys*, 15 CIT at ——, 764 F.Supp. at 192.  *See also* 28 U.S.C. § 2639(a)(1) (1988) (presumption of correctness);  *W.Y. Moberly, Inc. v. United States*, 924 F.2d 232, 237 (Fed.Cir.1991) (presumption of correctness).

## DISCUSSION

Under Rule 59(a)(2) of the Rules of this Court, "[a].... rehearing may be granted ... for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States."  A motion for rehearing is addressed to the sound discretion of the trial court.  *Sharp Elecs. Corp. v. United States*, 14 CIT ——, 729 F.Supp. 1354, 1355 (1990);  *RSI (India) Pvt., Ltd. v. United States*, 12 CIT 594, 595, 688 F.Supp. 646, 647 (1988), *aff'd*, 7 Fed.Cir. (T) 100, 876 F.2d 1571 (Fed.Cir.1989).  Rehearing is appropriate where there is a fundamental or significant flaw in the original proceeding. *Brookside Veneers, Ltd. v. United States*, 11 CIT 197, 197, 661 F.Supp. 620, 621 (1987), *rev'd on other grounds*, 6 Fed.Cir. (T) 121, 847 F.2d 786, *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

The purpose of a rehearing is not to relitigate.  *Belfont Sales Corp. v. United States*, 12 CIT 916, 917, 698 F.Supp. 916, 918 (1988), *aff'd*, 878 F.2d 1413 (Fed.Cir. 1989).  Nevertheless, the Court is mindful of its obligation to see that merchandise is correctly classified.  *See Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied*, 2 Fed.Cir. (T)

97, 739 F.2d 628 (1984). Defendant has raised several new arguments and has more clearly articulated its previous arguments. The Court in its discretion will reconsider its decision.

## I. DEDICATION TO A PARTICULAR USE

Defendant first argues the Court's application of *United States v. Quality Marble and Granite Co.*, 48 CCPA 50, C.A.D. 763 (1960) is incorrect as a matter of law. According to defendant, the *eo nomine* provision for other hardboards, whether or not face finished, includes merchandise which, absent that provision, would fall into the residual provision for building boards not specially provided for. Defendant's Memorandum in Support of Defendant's Motion for Rehearing, 7. Consequently, even if 100% of the merchandise were used as wall or ceiling covering, the *eo nomine* provision for hardboard prevails.

This argument is contrary to the decision in *American Hardboard Ass'n v. United States*, 12 CIT 714, 717, 1988 WL 84132 (1988), which held that hardboard is an input material commercially susceptible to a variety of uses. That holding is consistent with the *Tariff Classification Study* ("*TCS*") statement that "[h]ardboard is used chiefly in construction, in cabinet and millwork, in furniture and fixtures, and other fabricated and industrial products...." 4 *TCS* at 67. As was the case in *American Hardboard,* if 100% of the material were employed as wall covering, it would not be susceptible to a variety of uses such as those listed in the *TCS* and would, therefore, not be classifiable as a form of hardboard.

Defendant next argues that unlike the situation in *Quality Marble,* the TSUS provisions at issue disclose a congressional intention that building boards made of hardboard be excluded from classification as building board. As evidence for this proposition, defendant cites the *TCS* which states: "all fiber building boards (*except hardboard and gypsum board*) are provided in item 245.90 ... [as building boards not specially provided for]." 4 *TCS* at 69 (emphasis added). From this, defendant asserts that hardboard building boards or gypsum building boards are specifically excluded from classification as building boards. Defendant's Memorandum at 8.

Defendant's argument ignores the effect of the Court's factual determination that the merchandise has been processed to the extent that it is no longer hardboard. While the merchandise is fiber building board, it cannot properly be said that the *TCS* specifically excludes it from classification under item 245.90, TSUS. Hardboard has a variety of uses; this merchandise does not. Consequently, it is classifiable with all other fiber building boards under item 245.90, TSUS.

Finally, defendant argues because the 10% alternative use of plaintiff's merchandise is not fugitive, this action is distinguishable from *Quality Marble* and *A.P. Baldechi & Son v. United States,* 56 CCPA 112, C.A.D. 963, 420 F.2d 756 (1969). Defendant's Memorandum at 11. *Quality Marble* does not state that other uses of the imported merchandise were fugitive. *Baldechi* was based on an application of *Quality Marble* and did not turn on whether alternative uses of the merchandise were fugitive. Accordingly, defendant's argument is unpersuasive.

## II. ABSURD OR ANOMALOUS RESULTS OF THE COURT'S PRIOR RULING

Defendant maintains the Court's original determination will lead to absurd and anomalous results. Defendant's Memorandum at 12. Defendant's first example of an absurd result is the fact that under the Court's ruling, the merchandise is building board because it is used 90% or more of the time as wall covering. Despite this, face finished plywood, particle board and gypsum board, all of which are used 95% or more of the time as wall covering are not building board.

The Court has stated its opinion that plywood and gypsum board are more specifically defined in the TSUS and that hardboard is a limited classification. Plywood

and gypsum board are not similarly limited and, therefore, are in no danger of falling into the basket provision for building board. *See Humphreys,* 15 CIT at ——, 764 F.Supp. at 193.

Defendant next argues that the Court's reliance on the use of the merchandise is absurd because as use changes over time, classification of the merchandise may have to change. Building board is defined as being chiefly used in construction. Headnote 1(e), TSUS, Schedule 2, Part 3. Hardboard is an input material susceptible to multiple uses. Use, therefore, is relevant to the classification of the merchandise. The Court assumes Customs has substantial expertise in dealing with use provisions and that no new administrative burden will fall to Customs as a result of this holding. Defendant's argument is, therefore, unpersuasive.

Defendant also cites numerous facts to support its assertion that the merchandise is not precluded from the uses to which hardboard and face finished hardboard are put. The Court acknowledges the merchandise is not precluded from these uses and that the merchandise moves in the same channels of commerce at similar prices as hardboard. Nevertheless, the Court is left with the fact that the merchandise does not have a variety of uses and the limitation on the TSUS item for hardboard. Given this limitation and the holding in *Quality Marble,* it is not absurd to classify this extensively processed merchandise as something other than hardboard.

Defendant next argues the definition of "face finished" in Headnote 2 to Schedule 2, Part 3, TSUS requires the Court reverse its prior ruling. Headnote 2 states face finished means "that one or both surfaces of a panel or board have been treated with creosote or other wood preservatives, or with fillers, sealers, waxes, oils, stains, varnishes, paints, or enamels, or have been overlaid with paper, fabric, plastics, base metal or other material." From this, defendant argues a hardboard panel overlaid with base metal that has been edgeworked, machined, embossed and printed with a design would remain classifiable as face finished hardboard. Defendant's Memorandum at 16.

In *American Hardboard,* the court held the language "whether or not face finished" does not prevent merchandise which has undergone other sorts of processing from classification under the *eo nomine* provision for hardboard. *American Hardboard,* 12 CIT at 716. Nevertheless, neither the headnote nor *American Hardboard* provide that hardboard which has undergone all of the processes mentioned in defendant's argument remains classifiable as a form of hardboard. Moreover, while the Court does not decide the question, the use of the disjunctive "or" in the headnote appears to indicate that if hardboard were preserved with creosote *and* overlaid with base metal or otherwise processed, it would be more than face finished. It appears, therefore, the merchandise is something other than face finished hardboard.

III. *AMERICAN HARDBOARD* AND THE COMMON AND COMMERCIAL MEANING OF HARDBOARD

Defendant's last argument is that the Court's ruling is inconsistent with the decision in *American Hardboard* as well as the common and commercial meaning of hardboard. On this point, defendant first maintains the Court erred by comparing the merchandise to "standard hardboard" classifiable under items 245.00 through 245.20, TSUS, rather than to face finished hardboard classifiable under TSUS item 245.30. Defendant's Memorandum at 20.

The question before the Court is whether the merchandise falls within the common and commercial meaning of face finished hardboard. Following *American Hardboard,* the Court's analysis centered on whether the merchandise is an input material commercially susceptible to multiple uses. Having found guidance in answering this question in a decision of the Court of Appeals, the Court applied the analysis found in *Quality Marble.* To the extent the Court referred to standard hardboard,

see *Humphreys*, 15 CIT at ——, 764 F.Supp. at 192, that reference was for illustrative purposes and did not affect the outcome of the case. The Court finds, therefore, any error it committed in referring to standard hardboard to have been immaterial.

Defendant next contends the Court erred in failing to accept the definition of hardboard from an industrial commercial standard ("CS 251–63"). Defendant's Memorandum at 20. The Court rejected defendant's arguments based on CS 251–63 because the industry adopted the standard the year after Congress promulgated the TSUS. CS 251–63 is, therefore, not evidence of Congressional intent. *Humphreys*, 15 CIT at ——, 764 F.Supp. at 193. Defendant offers numerous cases where the Court allegedly relied on subsequent definitions as evidence of Congressional intent. *See, e.g., Daw Indus., Inc. v. United States*, 1 Fed.Cir. (T) 146, 147 n. 4, 714 F.2d 1140, 1141 n. 4 (1983); *Nippon Kogaku, Inc. v. United States*, 69 CCPA 89, 93 n. 2, 673 F.2d 380, 382 n. 2 (1982); *Toyota Motor Sales, Inc. v. United States*, 7 CIT 178, 182, 585 F.Supp. 649, 653, *aff'd*, 3 Fed.Cir. (T) 93, 753 F.2d 1061 (1985).

The cases defendant cites do not require this Court to give significant weight to a subsequent definition. In *Daw Indus.*, the question was the meaning of the term "prosthesis." The trial court relied on several dictionary definitions but did not state the year of publication for the references. *See Daw Indus.*, 5 CIT at 20–21, 561 F.Supp. at 439 (1983). In the next paragraph, the Court looked at the Summaries of Trade and Tariff Information which, because they were published after the enactment of TSUS, the Court stated are not evidence of Congressional intent but may be evidence of administrative practice. *Id.* at 21, 561 F.Supp. at 439.

On appeal, the Federal Circuit agreed with the trial court and did not address the meaning of prosthesis. *See Daw Indus.*, 1 Fed.Cir. (T) at 147, 714 F.2d at 1141. In a footnote, the Federal Circuit cited two medical dictionaries; one published in 1970 and the other in 1981 together with a 1965 and a pre-TSUS 1951 edition of the latter reference. *Id.* at 147 n. 4, 714 F.2d at 1141 n. 4.

In *Nippon Kogaku*, the Court of Appeals cited, in a footnote, a post-TSUS dictionary definition of a term as support for a proposition that was not in question. *Nippon Kogaku*, 69 CCPA at 93 n. 2, 673 F.2d at 382 n. 2 (1982). Despite this reference, the court's analysis focused almost exclusively on the *TCS* which was prepared prior to the TSUS in contemplation of the revised rate tariff schedules.

In *Toyota*, this court stated "the meaning to be given a descriptive term used in a tariff act is that which it had at the time of the law's enactment. A subsequent definition may not be used to expand the meaning of a term, but is an aid to clarifying it." *Toyota*, 7 CIT at 182, 585 F.Supp. at 653 (citations omitted). The subsequently established commercial standard, therefore, does not reflect the meaning of hardboard at the time of the enactment of the TSUS. The Court's analysis of the *TCS* and its prior decision in *American Hardboard* convinced the Court the term hardboard was sufficiently clear to obviate the need for further analysis based on subsequent definitions. Furthermore, defendant's reliance on CS 251–63 is an attempt to broaden the meaning of hardboard beyond merchandise having multiple uses to encompass articles having more limited applications. The Court, therefore, did not err in failing to give the proper weight to CS 251–63.

Defendant's remaining arguments go to the processing to which the merchandise was subjected during manufacturing. Defendant's Memorandum at 25–27. Defendant argues none of the individual processes is sufficient to advance the merchandise beyond hardboard. The Court, however, considered the merchandise in its final condition. Based on its consideration of the merchandise as a whole, as well as the use and marketing of the merchandise, the Court found it to have been advanced beyond the input material hardboard, whether or not face finished.

## CONCLUSION

Defendant's arguments have not convinced the Court that it in error or that there was a fundamental or significant flaw in the original proceeding. To the extent defendant raised additional arguments in this motion, the Court has considered them and finds them to be reiterations of arguments previously considered or otherwise not persuasive. Accordingly, the Court adheres to the reasoning and decision enunciated in its prior opinion. As defendant has abandoned its alternative classification, *see Humphreys*, 15 CIT at ——, 764 F.Supp. at 193, judgment is rendered in favor of plaintiff.

/s/Dominick L. DiCarlo
DOMINICK L. DiCARLO
Judge

Dated: August 16, 1991, New York, New York