Slip Op. 15-33

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ELKAY MANUFACTURING COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> GUANGDONG DONGYUAN KITCHENWARE INDUSTRIAL COMPANY, LTD., <br><br> Defendant-intervenor. | Before: Timothy C. Stanceu, Chief Judge <br><br> Consol. Court No. 13-00176 |

## OPINION AND ORDER

[Denying a motion for reconsideration of the court's decision remanding a determination by the U.S. Department of Commerce in an antidumping duty investigation]

Dated: April 20, 2015

*Joseph W. Dorn* and *P. Lee Smith*, King & Spalding LLP, of Washington D.C., for plaintiff and consolidated defendant-intervenor Elkay Manufacturing Company.

*Gregory S. Menegaz* and *J. Kevin Horgan*, DeKieffer & Horgan, PLLC, of Washington D.C., for consolidated plaintiff and defendant-intervenor Guangdong Dongyuan Kitchenware Industrial Company, Ltd.

*Patricia M. McCarthy*, Assistant Director, and *Richard P. Schroeder*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., for defendant United States. With them on the brief were *Joyce R. Branda*, Acting Assistant Attorney General, and *Jeanne E. Davidson*, Director. Of counsel on the brief was *Whitney M. Rolig*, Attorney-International, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Stanceu, Chief Judge: Guangdong Dongyuan Kitchenware Industrial Company, Ltd. ("Dongyuan"), defendant-intervenor and consolidated plaintiff in this case, moves for reconsideration of the court's December 22, 2014 decision remanding a determination of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in an antidumping duty investigation. Consol. Pl. Guangdong Dongyuan Kitchenware R. 59(a) Mot. for Reconsideration (Jan. 21, 2015), ECF No. 55 ("Dongyuan's Mot."). *See Elkay Mfg. Co. v. United States*, 38 CIT __, 34 F. Supp. 3d 1369 (2014) ("*Elkay*"). The court denies Dongyuan's motion.

## I. BACKGROUND

This case is a consolidation of challenges by Dongyuan, a producer/exporter of subject merchandise and Elkay Manufacturing Company ("Elkay"), domestic producer and petitioner, to the Department's final determination ("Final Determination") in the less-than-fair value investigation of drawn stainless steel sinks ("subject merchandise") from the People's Republic of China ("China" or the "PRC"). *See Drawn Stainless Steel Sinks From the People's Republic of China: Investigation, Final Determination*, 78 Fed. Reg. 13,019 (Int'l Trade Admin. Feb. 26, 2013) ("*Final Determination*"); *Drawn Stainless Steel Sinks from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 Fed. Reg. 21,592 (Int'l Trade Admin. April 11, 2013) ("Order"). The court issued an opinion and order on December 22, 2014 remanding the Final Determination to Commerce for reconsideration. *Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1370. The background of this case is set forth in that opinion and order.

Dongyuan filed its Motion for Reconsideration on January 21, 2015, Dongyuan's Mot. 1, and defendant filed a brief in opposition on February 19, 2015, Def.'s Opp'n to Mot. for

Reconsideration by Guangdong Dongyuan Kitchenware Industrial Co., Ltd. 1 (Feb. 19, 2015),

ECF No. 59 ("Def.'s Opp'n").  The proceeding for the filing of the remand determination is

ongoing.

## II. DISCUSSION

USCIT Rule 59 authorizes a rehearing after a nonjury trial "for any reason for which a

rehearing has heretofore been granted in a suit in equity in federal court."  USCIT

R. 59(a)(1)(B).  "A motion for rehearing is addressed to the sound discretion of the trial court,"

and the grant of such a motion "is appropriate where there is a fundamental or significant flaw in

the original proceeding."  *Arthur J. Humphreys, Inc. v. United States*, 973 F.2d 1554, 1560 (Fed.

Cir. 1992) ("*Arthur J. Humphreys*").  However, "[t]he purpose of a rehearing is not to relitigate."

*Id.*  Instead, "'[t]he major grounds justifying reconsideration are an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice.'"  *Royal Thai Gov't v. United States,* 30 CIT 1072, 1074,

441 F. Supp. 2d 1350, 1354 (2006) (citation omitted).  For the reasons discussed below, the court

concludes that Dongyuan has not shown that the grant of its motion would be appropriate.

The court's opinion and order in *Elkay* addressed two challenges to the Final

Determination: (1) Dongyuan's challenge to the Department's use of import data from Thailand

to determine a surrogate value for a factor of production (FOP), the cold-rolled stainless steel

coil that Dongyuan used as the primary material in producing subject merchandise; and

(2) Elkay's challenge to the Department's method of accounting for selling, general, and

administrative ("SG&A") labor expenses in the normal value determinations for Dongyuan and

another individually-investigated producer/exporter.  *Elkay*, 38 CIT at __, 34 F. Supp. 3d

at 1373-74, 1376.  In response to Dongyuan's challenge, Commerce requested a voluntary

remand to place on the record additional data that would allow it to consider whether the Thai import data Commerce used to determine a surrogate value for the steel coil input were aberrational, which the court granted. *Id.* at __, 34 F. Supp. 3d at 1374, 1386. In response to the second challenge, the court ordered Commerce to reconsider the method it used to account for SG&A labor expenses in the normal value calculations and, as necessary, to revise the antidumping duty margins for both the investigated and separate rate respondents. *Id.* at __, 34 F. Supp. 3d at 1375-76, 1386. In its Motion for Reconsideration, Dongyuan seeks rehearing on both aspects of the court's remand order.

A. Dongyuan's Request for Reconsideration of the Court's Remand Order Concerning Surrogate Values for Cold-Rolled Stainless Steel Coil

In response to defendant's request for a voluntary remand, the court ordered Commerce to "reconsider[] the use of surrogate information from Thailand to value cold-rolled stainless steel coil when determining the normal value of Dongyuan's subject merchandise . . . ." *Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1386. Defendant stated that certain data relevant to a surrogate value determination for the stainless steel coil FOP were missing from the record and asked for leave so that Commerce could reopen the record to include those data. Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R. 16 (Feb. 28, 2014), ECF No. 40 ("Def. Opp'n"). The court ordered that "if Commerce places additional surrogate value data on the record on remand, Commerce must provide parties to this litigation the opportunity to submit comments concerning those data and the Department's decision addressing the valuation of cold-rolled stainless steel coil . . . ." *Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1386.

Dongyuan requests that the court direct Commerce to make a specific finding that the Thai import data are unreliable, issue an order vacating the opinion and order in *Elkay*, instruct Commerce to "forego reliance on any Thai import statistics for cold-rolled steel inputs consumed

by Dongyuan Kitchenware," and further instruct Commerce to "to reconsider fully which part of the extensive existent steel surrogate value data constitutes the 'best available information' on the administrative record to value Dongyuan Kitchenware's cold-rolled steel inputs." Dongyuan's Mot. 21-22, Proposed Order.  Dongyuan advances several reasons why the court should do so.

Dongyuan argues, first, that Commerce had "multiple opportunities by letter, statute, and regulation for the submission of the very data that the Department now suggests should be added" and that Commerce should not be given additional opportunities "in the absence of extraordinary circumstances (*e.g.*, a fraud on the Department)."  Dongyuan's Mot. 3.  This argument is meritless.  Reopening of the record upon remand ordinarily is a matter of agency discretion, and Dongyuan cites no authority for its conclusion that the court, in this case, violated an established law or binding precedent in allowing Commerce to reopen the record on remand. *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) ("The decision to reopen the record is best left to the agency . . . .").

Dongyuan submits that the court's decision granting Commerce the voluntary remand and allowing reopening of the record was contrary to the statutory timelines set by Congress for conducting an antidumping investigation.  Dongyuan's Mot. 3.  The court does not find merit in this argument.  The remand proceeding is being conducted under the authority of this Court pursuant to statutory provisions governing judicial review, *see* 19 U.S.C. § 1516a (2012); 28 U.S.C. § 2640(b) (2012), not the provisions governing the time limits for the agency's conducting of the investigation prior to the publication of the contested determination, *see* 19 U.S.C. § 1673b(b)(1)(A), (c)(1)(B) (2012).  Nothing in the statute negates the Department's

authority, exercised under the Court's supervision, to reopen an agency record and to reconsider

its prior decision pursuant to a remand conducted under the Court's authority.[1]

Dongyuan also argues that reopening of the record to admit additional data is inconsistent

with the Department's regulation, 19 C.F.R. § 351.301(c)(3)(1)(2012), which governed the date

by which surrogate value information was required to be submitted to the record.[2]  Dongyuan's

Mot. 5.  This argument fails because the cited regulation is not applicable here.  The regulation

addressed the time limit for submission of information by parties for use in valuing factors of

production during an antidumping investigation, not during a judicial review proceeding.

Dongyuan argues that the court's granting the voluntary remand request "constitutes a

manifest injustice." *Id.* at 8.  In support of this contention, Dongyuan maintains that its

"strenuous and diligent efforts to prepare and submit a winning case in the investigation have

been negated after the fact" and that Dongyuan "now faces a substantial new expense both in

---

[1] This case is unlike *Corus Staal BV v. United States*, 29 CIT 777, 783, 387 F. Supp. 2d 1291, 1297 (2005), *aff'd*, 186 Fed. Appx. 997 (Fed. Cir. 2006) ("*Corus Staal*"), which Guangdong Dongyuan Kitchenware Industrial Company, Ltd. ("Dongyuan") cites in connection with its argument on statutory time requirements for the conducting of an investigation.  Consol. Pl. Guangdong Dongyuan Kitchenware R. 59(a) Mot. for Reconsideration (Jan. 21, 2015), ECF No. 55 ("Dongyuan's Mot.").  In *Corus Staal*, the Court of International Trade ("CIT") stated that "[t]he Government must give due regard to finality and cannot simply ask for a do-over any time it wishes." *Corus Staal*, 29 CIT at 782-83, 387 F. Supp. 2d at 1296-97.  *Corus Staal* is neither precedential nor on point.  In *Corus Staal*, the CIT denied the government's request for a remand where the U.S. Department of Commerce ("Commerce" or the "Department") requested the remand to correct an error alleged by a defendant-intervenor that had not filed an action seeking relief and where Commerce provided only an undetailed assertion that there was an error. *Id.*  In this case, Commerce requested a remand in response to a specific challenge brought by Dongyuan to the surrogate value for stainless steel coil.

[2] At the time of the proceeding at issue in this case, the deadline in effect was forty days following publication of the preliminary determination.  Commerce later shortened the period for submission by publication of a notice of amendment. *See* Dongyuan's Mot. 5 n.4 (citing *Definition of Factual Information and Time Limits for Submission of Factual Information*, 78 Fed. Reg. 21,246 (Int'l Trade Admin. Apr. 10, 2013).

terms of an open-ended new investigation and in its ongoing involvement in the review segments

which it believes are unjustified in light of the lack of dumping during the investigation." *Id*.

Dongyan objects, further, that petitioner Elkay "will have a second chance to develop the record"

after failing to do so during the agency proceeding. *Id.* at 8. Dongyuan also argues that the

court's decision leaves "the discretion to 'cure' bad decisions solely with the agency" while

offering no similar opportunity to the parties. *Id.* at 3. The court rejects these arguments, which

do not negate the established principle that good faith requests by administrative agencies for

voluntary remands are, as a general matter, to be granted by reviewing courts. *See, e.g. SKF*

*USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (opining that "even if there are

no intervening events, the agency may request a remand (without confessing error) in order to

reconsider its previous position" and that "if the agency's concern is substantial and legitimate, a

remand is usually appropriate") ("*SKF*"). Dongyuan's description of the court's order as calling

for "an open-ended new investigation" is inaccurate because not all aspects of the Final

Determination are subject to remand. As to the Department's determination of the steel coil

surrogate value (the aspect of the Final Determination that Dongyuan itself challenged),

Dongyuan and Elkay will have the same opportunity to comment upon any newly-submitted data

and to make arguments in support of or against the decision Commerce reaches upon remand in

valuing the FOP. *See Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1386.

Dongyuan next submits that the arguments it made in support of its motion for judgment

on the agency record should have prevailed and thereby mooted the Department's request for a

voluntary remand to obtain additional data for valuing the steel coil input. Dongyuan's Mot. 9.

According to Dongyuan, "[t]he Department seeks to add the additional steel values to support the

reasonableness of the Thai values it selected in its final determination," which Dongyuan

characterizes as "not reliable, representative, or usable for purposes of the investigation." *Id*. Dongyuan adds that "it is not apparent that the Court considered this important aspect of the issues before it" and that "[r]emanding rather than ruling on all of Dongyuan Kitchenware's claims constitutes a manifest injustice not only because it negates [Dongyuan's] diligent efforts in briefing these matters initially before the agency and again before the Court but also because the Court has not held the Department to any standards of consistency or accountability for its uninterrupted administrative practices." *Id*. These various arguments are an attempt to relitigate matters the court has already decided. *See Arthur J. Humphreys*, 973 F.2d at 1560. What is more, Donyuan advances these arguments without demonstrating that the court, in deciding to issue the remand order to which Dongyuan objects rather than direct Commerce to reject the Thai import data, committed a clear error or allowed a manifest injustice by exceeding its judicial authority.

Finally, Dongyuan asserts that "[t]he Court's opinion is not clear on the scope of the remand contemplated with respect to the surrogate value of steel" and requests clarification of the scope of the remand. Dongyuan's Mot. 11. But in requesting clarification, Dongyuan essentially repeats its previous arguments alleging the unreliability of the Thai import data and offers additional information on that topic, which Dongyuan posits that Commerce should accept for the record during the remand proceeding. *Id*. at 11-13. The court rejects Dongyuan's request for clarification. In objecting to the court's remand order as it applies to the surrogate value determination for the steel coil FOP, Dongyuan neither identifies an ambiguity in the language by which the court ordered a remand nor establishes a potential for misunderstanding.

In summary, Dongyuan fails to identify a valid ground upon which the court must, or should, reconsider the order it issued in *Elkay* to address the steel coil FOP issue.

2.  Dongyuan's Request for Reconsideration of the Court's Order Concerning Surrogate Ratios
for SG&A Expenses

In the Final Determination, Commerce calculated surrogate ratios for selling, general and administrative ("SG&A") and interest expenses for the two individually-investigated respondents (Dongyuan and another producer/exporter) using combined data from financial statements of three companies in the chosen surrogate country, Thailand. *Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1377.  Commerce had found that certain labor expenses included in these financial statements were already included in the normal value calculations for the investigated respondents because of the particular surrogate rate Commerce chose to value hours of labor. *Id.* at __, 34 F. Supp. 3d at 1377-79.  As a result, Commerce made certain adjustments to the SG&A expenses listed in the financial statements when calculating the SG&A and interest expense ratios to avoid what it considered to be double-counting. *Id*.  Specifically, Commerce removed from its calculation of the SG&A/interest rate expense ratios certain labor-related costs that were itemized in the financial statements. *Id*.

After considering the record evidence pertaining to the Department's chosen surrogate labor rate, which was derived from Thailand's National Statistics Office ("NSO") Industrial Census 2007 data, the court concluded that substantial record evidence did not support the finding that double-counting of labor expenses would necessarily occur absent the particular adjustments Commerce chose to make in the SG&A/interest rate expense ratio calculations. *Id.* at __, 34 F. Supp. 3d at 1380.  The court directed Commerce to "reconsider its decision to adjust the SG&A/interest expense ratios and the particular way in which it accomplished those adjustments." *Id.* at __, 34 F. Supp. 3d at 1385.  The court added that "because Commerce grounded its decision in part on its choice of a surrogate labor cost, it may consider on remand

alternative data sources with which to value the labor hours reported by the two investigated respondents." *Id*.

In its Motion for Reconsideration, Dongyuan argues that one of the alternate sources of data from which Commerce, on remand, might value labor hours—Chapter 6A of the International Labor Organization ("ILO") Yearbook of Labor Statistics—is shown by record evidence to be seriously flawed. Dongyuan's Mot. 15-17. Dongyuan adds that the errors in the ILO Chapter 6A data would have been clear to the court from certain information Dongyuan submitted during the investigation. *Id*. Dongyuan characterizes this information as a disavowal of the data by the ILO itself, which, according to Dongyuan, removed these data from its statistical database. Dongyuan asserts that Commerce wrongfully excluded this information from the record of the investigation as untimely submitted new factual information. *Id*. at 14-16. According to Dongyuan, the evidence Commerce did allow on the record is sufficient to demonstrate the serious flaws in, and the unsuitability of, the ILO Chapter 6A data (which Commerce had used as a source for valuing labor hours in the preliminary phase of the investigation). *Id*. at 17. Dongyuan "requests that the Court review this record evidence and reconsider its request that the Department revisit its choice of surrogate value for the labor rate in this investigation." *Id*.

Because Dongyuan misreads the court's opinion and order in *Elkay*, the court must reject Dongyuan's request. Nothing in the court's opinion and order requested or required that Commerce revisit its choice of surrogate value for the labor rate. To the contrary, the court *permitted* Commerce to do so if Commerce so chose. In describing Elkay's claim, the court stated that "Elkay claims that Commerce failed to include in the normal value calculation the total cost of the 'hours of labor required,' as required by 19 U.S.C. § 1677b(c)(3)(A), or to

capture satisfactorily 'general expenses,' as required by 19 U.S.C. § 1677b(c)(1)." *Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1376. As the court noted, "Commerce grounded its decision in part on its choice of a surrogate labor rate." *Id.* at __, 34 F. Supp. 3d at 1385.

The court also must reject Dongyuan's request for other reasons. Dongyuan does not identify any clear error or manifest injustice in the court's allowing Commerce to consider other data sources for the valuing the labor hours. Instead, Dongyuan appears to agree with that approach and directs its objection solely to the prospect of the Department's choosing to use the ILO Chapter 6A data. Mentioning that it had placed on the record "comparable wage data from economically comparable countries," Dongyuan informs the court that it "would not object if the Department chose any of the other reliable sources with lower labor rates from the record evidence." *Id*. at 17. Rather than identify a clear error or manifest injustice, Dongyuan is attempting to offer, prematurely, argument on an issue that is pending in this litigation. Dongyuan will have the opportunity to comment on the submission Commerce makes upon remand, including the Department's method of addressing the treatment of SG&A labor expenses in the normal value calculation. If Commerce chooses to reconsider its choice of data with which to value the labor hours, Dongyuan also will have the opportunity to comment on and make arguments concerning that specific aspect of the Department's decision.

Dongyuan also asks for reconsideration of the court's statement that the record data did "not support an actual finding that the NSO labor rate was higher—or by what percentage it was higher—than it would have been had it been derived solely from Thai data on production labor rather than from a combination of Thai data on production labor and various types of non-production labor." Dongyuan's Mot. 18 (citing *Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1382). This statement occurred in a discussion holding invalid "the principal conclusion

underlying the [Department's] decision to make the adjustments to the SG&A/interest expense ratios," *Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1380, which was that those adjustments were "necessary in order 'to avoid double-counting SG&A labor.'" *Id.* at __, 34 F. Supp. 3d at 1381 (citation omitted). As to why the Department's finding of double-counting was unsupported by substantial evidence, the court explained that "[t]he NSO information supports a finding that the NSO rate was derived from an average remuneration paid for 'persons engaged' in various production-related and non-production-related activities." *Id.* The court noted, however, that "[l]ess clear is that the NSO labor rate is higher than it would have been had it been derived solely from data on production workers." *Id.* The court stated, further, that "[a]pparently, missing from the record are the raw data from which the NSO rate was derived, which possibly could support such conclusions." *Id.* at __, 34 F. Supp. 3d at 1382. The court did not reach its own finding that the NSO labor rate was no higher than it would have been had it been derived solely from data on production workers.

In support of its Motion for Reconsideration, Dongyuan reproduces record data that it submits "support the conclusion that wages and salaries for non-factory workers are across the board higher than for direct production labor and packing labor, the two categories to which the Department applies its labor rate." Dongyuan's Mot. 18. Because this information is not data from the 2007 NSO Industrial Census that underlies the NSO labor rate Commerce used in the Final Determination, it does not support a finding that the NSO labor rate is higher than it would have been had it been derived solely from data on production workers.[3] Even Dongyuan

---

[3] Dongyuan cites a website, Business-in-Asia.com, for its average baht/hour wage rate for various non-production labor wages (Plant Manager, Office Manager, Executive Secretary, Sales/Marketing Staff, General Office Staff), and it cites NSO/Bank of Thailand data for various other wages (Technicians, Clerks, Sales Workers, Machine Operators & Assemblers, Elementary (continued . . .)

"concedes that the record evidence summarized above may not quite reach the standard set by the Court of 'raw data' from which the above rates are derived." Dongyuan's Mot. 19. In summary, the record information to which Dongyuan refers in support of its Motion for Reconsideration does not show that the court erred in its statements concerning the absence from the record of source data underlying the NSO labor rate. Nor has Dongyuan demonstrated an error in the court's holding that the record lacked sufficient evidence on which Commerce could conclude that SG&A labor costs would be double-counted but for the adjustments made.

Next, Dongyuan urges reconsideration of the court's statement that "even if the NSO rate were presumed to be higher than it would be if it had not included non-production labor . . . the record would not support the Department's conclusion that the adjustments the Department made to the SG&A/interest expense ratios were appropriate adjustments for the double-counting of SG&A labor that the Department found would occur absent those adjustments." Dongyuan's Mot. 20 (quoting *Elkay* 38 CIT at __, 34 F. Supp. 3d at 1383). Dongyuan complains that this statement "contradicts," *id*., the Department's intention, as stated in the Department's 2011 notice ("*Labor Methodologies*") announcing a new methodology for valuing labor in non-market economy (NME) proceedings. As described by the court, that intent is for Commerce to "make the appropriate adjustments to the surrogate financial statements subject to the available information on the record." *Elkay*, 38 CIT at __, 34 F. Supp. 3d at 1383 n. 20 (citing *Antidumping Methodologies in Proceedings Involving Non-Market Economies: Valuing the Factor of Production*: *Labor*, 76 Fed. Reg. 36,092 (Int'l Trade Admin. June 21, 2011) ("*Labor Methodologies*"). Dongyuan argues that "the Court appears to be overturning the Department's

_____

(continued . . .)
Occupations). Dongyuan's Mot. 19. The NSO data that Dongyuan submits is from a Bank of Thailand/NSO report that is different than the 2007 NSO Industrial Census.

new labor calculation policy articulated in its *Labor Methodologies* notice." Dongyuan's

Mot. 21. This argument misconstrues the court's decision in *Elkay*. The court stated that the

*Labor Methodologies* notice does not serve as support for the Department's decision to adjust the

SG&A expenses listed in the surrogate financial statements because Commerce did not use the

ILO Chapter 6A rate as a surrogate value for labor for this case. *Elkay*, 38 CIT at __,

34 F. Supp. 3d at 1384-84. The court added that even if the *Labor Methodologies* notice is

construed to reflect an intention by Commerce to make appropriate adjustments to

SG&A/interest expense ratios even when Commerce does not use the Chapter 6A data, the court

still would conclude "the record in this case does not contain substantial evidence to support the

Department's conclusion that when calculating the SG&A/interest expense ratios Commerce

made appropriate adjustments to the surrogate financial statements to compensate for an

overstated labor cost." *Id.* at __, 34 F. Supp. 3d at 1384. The court did not hold impermissible

any adjustments to SG&A expenses, concluding instead that record evidence did not demonstrate

that the specific adjustments Commerce made in the Final Determination were appropriate. *Id.*

at __, 34 F. Supp. 3d at 1382.

## II. CONCLUSION AND ORDER

For the reasons discussed in the foregoing, upon consideration of Dongyuan's Motion for

Reconsideration, and the responses of defendant thereto, upon consideration of all papers and

proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that Dongyuan's Motion for Reconsideration be, and hereby is, denied.

/s/Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: April 20, 2015
New York, NY